**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **TRANELL M. NALL,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CV-2:06-KOB-1900** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of the Social Security** ) | |
| **Administration** ) | |
| ) | |
| **Defendant.** ) | |

**MEMORANDUM OPINION**

**I. Introduction**

The Claimant, Tranell M. Nall, filed applications for disability insurance benefits and

supplemental security income payments on January 6, 2003 (R. 55-57), alleging a disability

commencing on February 1, 2001 (R. 524-527) caused by back pain, migraine headaches, and

acid reflux disease. (R. 545).  The Commissioner denied the claims.  Claimant filed a timely

request for a hearing before an Administrative Law Judge ("ALJ"). (R. 43-47).  Claimant

testified at an ALJ hearing on September 27, 2004 in Birmingham, Alabama. (R. 18).  Vocational

Expert ("VE") John Long, Jr., also testified. (R. 567). [1]

In a decision dated June 23, 2005, the ALJ found that Claimant was not disabled within

---

[1] Claimant was insured for disability insurance benefits through December 31, 2004. (R. 19).

the meaning of the Social Security Act, and was therefore not eligible for disability insurance

benefits and supplemental security income payments. (R. 32-33).  On July 25, 2006, the Appeals

Council denied Claimant's request for review. (R. 5).  Claimant has exhausted his administrative

remedies, and this court has jurisdiction under 42 U.S.C. §§405(g) and 1631(c)(3). For the

reasons stated below, the decision of the Commissioner will be AFFIRMED.

## II. Legal Standard

Under 42 U.S.C. § 423 (d)(1)(A), a person is entitled to disability benefits when the

person cannot

> engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected
> to result in death or which has lasted or can be expected to last for a
> continuous period of not less than twelve months.

To make this determination, the Commissioner employs five-step, sequential evaluation

process:

> (1) Is the person presently employed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific
> impairments set forth in 20 C.F.R. pt. 404, subpt. P, app.1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the
> economy?
>
> An affirmative answer to any of the above questions leads either to
> the next question, or, on steps three or five, to a finding of disability.
> A negative answer to any question, other than step three, leads to a
> determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); *see also* 20 C.F.R. §§ 404.1520,

416.920.

### III.  Standard of Review

The standard for reviewing the Commissioner's decision is limited.  This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if his factual conclusions are supported by substantial evidence.  *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).  "No . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999.  This court does not review the Commissioner's factual determinations *de novo*, but will affirm those factual determinations that are supported by substantial evidence.  "Substantial evidence" is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner]'s factual findings." *Walker*, 826 F.2d at 999.  A reviewing court must not only look to those parts of the record that support the decision of the ALJ, but must also view the record in its entirety and take account of evidence that detracts from evidence on which the ALJ relied. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

### IV. Issues Presented

Claimant argues that ALJ committed reversible error by failing to state with particularity the weight given to certain medical opinions in the record and his reasons for doing so and by improperly rejecting the most contemporaneous assessment of his residual functional capacity ("RFC").  Also, Claimant argues that the ALJ's physical RFC

**V. Facts**

Claimant was twenty-nine years old at the time of the administrative hearing and has an eleventh-grade education. (R. 19, 540).  His past work experience includes employment as a cook, valet worker and driver. (R. 19, 567).  According to Claimant, he became disabled on February 1, 2001, due to migraine headaches, back pain, and acid reflux disease. (R. 18, 524-27, 545).

Claimant received a gunshot wound on September 9, 1993 (R. 103-04), and was involved in a motor vehicle accident on July 30, 1995, in which his neck was broken.[2] (R. 19, 107-24).  The gunshot wound left Claimant "in no acute distress," with two hematomas, open wounds at the back of the head, and birdshot pellets remaining scattered throughout his body. (R. 103).  Claimant remained in the hospital for one night and was discharged in satisfactory condition. (*Id.*).  However, he failed to attend his follow-up appointment on September 15, 1993 at the UAB Hospital Trauma Clinic. (R.103-07).

During the 1995 motor vehicle accident, Claimant suffered a closed head injury.  When a CT scan revealed subluxation with a C-5 lamina fracture and facet fracture, Claimant was placed in a halo and discharged in stable condition. (R. 107).  Claimant later removed his own halo two months prior to its scheduled removal. (R. 292).

Claimant  testified at the 2005 ALJ hearing that he has experienced back and neck problems as well as daily headaches, with blurry vision occasionally lasting all day. (R. 545).  Since his vehicle accident, these symptoms have intensified. (R. 19, 543).  Claimant takes

---

[2]Claimant was previously on disability for injuries from the gunshot wound and the motor vehicle accident. (R. 541, Pl.'s Br. 3).

Darvocet, but it does not always alleviate his headaches, which intensify when he is under stress. (R. 544, 549).  He also suffers from gastrointestinal problems that allegedly began in January 2004, including acid reflux disease and ulcers. (R. 560).  These problems are allegedly exacerbated by his medication for headaches and back pain. (R. 533).  Claimant testified that he has prescriptions for his acid reflux disease that he failed to fill because they were too expensive and that he instead takes over-the-counter medications, such as Zantac. (R. 553).  Claimant further testified that he spends the majority of his time lying down because he is unable to stand for periods of time, is unable to walk for more than ten to twenty feet without stopping, and is unable to sit for more than fifteen minutes because of pain in his back and neck. (R. 19-20, 547-48).

Dr. Bruce Romeo, an internist, saw Claimant on March 4, 2003 at the request of the Social Security Administration. (R. 125-34, Exh. 3F).  Upon examination, he found that Claimant's gait appeared mildly antalgic to the left and that he ambulated with a self-prescribed cane in the right hand.  However, Dr. Romeo found no limitations on Claimant's ability to stoop, kneel, crouch, walk on his heels and toes, or on his tandem walking abilities. (R. 127).  Dr. Romeo estimated that Claimant could lift and carry twenty pounds constantly, forty pounds frequently, and sixty pounds occasionally and had no limits on his ability to stand, walk, or sit. (R. 132).  Dr. Romeo diagnosed Claimant  with chronic neck and back stiffness secondary to status post cervical fracture by history without evidence of residual etiologic pathology with non-organic illness behavior.  However, Dr. Romeo observed that Claimant's neck and back had no spasm. (R. 125-34).   Dr. Romeo arranged for an x-ray of Claimant's lumbosacral spine, which revealed that Claimant had no fracture or subluxation. (R. 131).

5

On two occasions – March 18, 2003, and August 5, 2003 – Claimant was admitted to the emergency room at Baptist Montclair with complaints of vomiting, abdominal pain, and diarrhea on the second occasion. (R.135-44, 264-71).  At the March visit, Claimant was diagnosed with abdominal pain and acute gastritis, and a drug test was positive for cannabis. (R. 135-44).  At the August visit, Claimant was diagnosed with vomiting, diarrhea, and volume depletion. (R. 264-71).  A radiology report showed no remarkable findings (R. 268).  Claimant returned to the ER again on August 5, still having abdominal pain but unable to get his prescriptions filled. (R. 235-58).

On January 28, 2004, Claimant was admitted to the ER with upper gastrointestinal (GI) bleeding. (R. 202).  Claimant stated that he had taken four packages of Goody's Powder per day for the preceeding year, and he also took medications such as aspirin and Motrin regularly for headaches. (*Id.*).  An esophagogastroduodenoscopy (EGD) revealed that Claimant had no active bleeding and only mild duodenitis, allowing Claimant to be discharged twenty-three hours later with a prescription for Zantac and Lortab; an admonition to discontinue use of Goody's powder, ibuprofen, and aspirin and to substitute only Tylenol for headaches; and a sample of Protonix.  Claimant was further advised to follow up with a Dr. Bhalla in the referral clinic when the sample ran out, as Dr. Bhalla would assist him in procuring other samples or prescriptions since Claimant was an uninsured patient. (R. 202, 221).  There is no evidence in the record that Claimant ever saw Dr. Bhalla.

Claimant returned to the emergency room two days later, on January 30, 2004, again complaining of abdominal pain.  The history in the discharge summary report shows that, although "it was thought that the patient did not really require admission," he demanded to be

6

admitted, claiming that he could not keep any food or medicine down. (R. 201).  This time, Claimant was admitted for IV fluids, IV Protonix, pain medications, and Phenergan for duodenitis and decreased hematemesis. (*Id.*).  Although advised to stay overnight, Claimant, against medical advice, signed himself out "without further discussion." (R. 39, 207).

On February 4, 2004, Claimant entered St. Vincent's Hospital, complaining of nausea, vomiting, and abdominal pain. (R.369).  An endoscopic examination on Feb. 5, 2004, showed that Claimant had a "normal" esophagus, stomach, and duodenum. (R. 379).  Claimant admitted to using marijuana and that his stomach pains began following that use. (R. 369).  Treatment notes indicate that Claimant received an application in order to follow-up at Cooper Green Clinic or St. Vincent's Clinic. (R. 370).

Dr. Steven Rudd, a neurologist and consultative examiner, saw Claimant on March 24, 2004, at the referral of Tena Fleming of the Disability Determination Service ("DDS"). (R. 148).  Upon examination, Claimant gave a history of headaches, for which he took Lortab and Propoxyphene, although he claimed they had not always been helpful. (R. 145).  Dr. Rudd believed Claimant to have rebound headaches resulting from overuse of the two medications. (R. 146).  Dr. Rudd reported that this overuse led to development of a syndrome that "sounds like chronic migrane." (*Id.*).  Dr. Rudd's neurological evaluation further revealed that Claimant did not use an assistive device to ambulate, and that Claimant was able to arise from a full squat unaided and had no muscle spasm or atrophy. (R. 146).  Dr. Rudd also tested Claimant with manual and gravity maneuvers but found no significant weakness in the proximal or distal arm or leg groups. (R. 145-151).  Claimant did not have any significant joint deformities, which Dr. Rudd opined indicated good healing of the previous C5-6 fracture ("broken neck" discussed

earlier).  Dr. Rudd had no limitations on defendant based upon objective neurological findings.
(R. 145-46).

Although Dr. Rudd noted Claimant's self-described history of "recurrent pain when
sitting or standing, exacerbated by lifting or bending," Dr. Rudd could not find, "even on a
subjective basis" any impairment in hearing, speech, cognition, or handling of objects. (R. 147).
Also, Dr. Rudd noted Claimant's statements of neck and back pain occurring after "30-40
minutes" of walking, standing, or sitting.  Dr. Rudd found no "objective neurologic findings" that
would limit Claimant's ability to walk, stand, sit, stoop, crouch, crawl, or kneel. (R. 147, 150).
Dr. Rudd further found no reason to limit Claimant's ability to drive or work in high, exposed
places. (R. 149).

Claimant had additional ER visits at St. Vincent's hospital  for vomiting and abdominal
pain on May 5 and 9, 2004, during which he had positive urine drug screens. (R.489, 506).

Claimant received treatment again at Baptist Medical Center – Montclair on the night of
May 6, 2004, for epigastric abdominal pain. (R. 165).  He was diagnosed with gastroenteritis;
prescribed Cipro, Phenergan, and Darvocet; and discharged on May 7, 2004. (*Id.*).  In his
treatment report, Dr. William Tapscott, the attending ER physician, noted that "patient has been
significantly noncompliant through[out his] records." (R. 167).  Further, Dr. Tapscott noted that
Claimant entered the emergency room at Montclair after "visiting apparently two other
emergency rooms" that night and not being satisfied with their respective diagnoses. (R. 168).

At the referral of Claimant's attorney, Dr. J.L. Zaremba examined Claimant on October 5,
2004. (R. 515-23).  In Dr. Zaremba's opinion, Claimant suffered chronic pain and cervical
spasms associated with limitations in range of motion that required Claimant to use analgesies,

which, in turn, limited physical activity. (*Id.*).  Dr. Zaremba opined that Claimant's back pain was aggravated by prolonged standing, bending, and lifting. (*Id.*).  Further, Dr. Zaremba noted that Claimant's status post gunshot wound with retained pellet fragments in the back was not necessarily symptomatic. (R. 518).  He also noted that some of Claimant's frequent migraine headaches could result from either muscle contraction or rebound headaches from medication. (*Id.*).  Dr. Zaremba limited Claimant to lifting no more than five pounds occasionally, standing or walking for no more than one hour in an eight-hour period; and sitting for no more than two to three hours in an eight-hour period. (R. 519-23).  He estimated that Claimant could never push/pull with his left arm or leg and could never climb, bend, stoop, reach, operate motor vehicles, or work around hazardous machinery. (R. 519).

According to the five-step process followed by the Eleventh Circuit, the ALJ first determined that Claimant has not engaged in substantial gainful activity since the alleged onset of disability. (R. 19).  Next, the ALJ determined that Claimant has the "severe" impairments of status post cervical fracture with subluxation and Halo stabilization, status post gunshot wound with retained pellet fragments, medication overuse headaches, and gastroenteritis. (R. 25).  However, the ALJ determined that these severe impairments, individually and collectively, were insufficient to meet or equal an impairment listed in Appendix 1, Subpart P, 20 C.F.R. Part 404. (*Id.*).

The ALJ concluded that Claimant had the RFC to lift and/or carry up to twenty pounds occasionally and ten pounds frequently, stand/walk for up to six hours in an eight-hour workday, and sit for up to two hours in an eight-hour workday. (R. 30).  Claimant was also restricted to only occasional bending, stooping, squatting, crawling, pushing/pulling movements of the upper

extremities, and could not drive or work around unprotected heights. (*Id.*).

The ALJ found that Claimant's allegation of disabling back pain, headaches, and acid

reflux were unsupported by objective medical evidence and concluded that Claimant was unable

to perform any of his past relevant work ("PRW") but, based upon the testimony of the VE,  had

the ability to perform work that exists in significant numbers in the national economy and is not

under a "disability" as defined in the Social Security Act at any time through the date of this

decision. 20 C.F.R §§ 404.1520(g) and 416.920(g)). (R. 32).

finding is not founded in the record and is therefore not based on substantial evidence.

## VI. Discussion

### I. Whether ALJ properly stated the weight given physicians in the record and properly rejected the opinions of certain physicians in the record.

Claimant argues that the ALJ failed to state the weight given to the opinion of DDS

examiners, Drs. Rudd and Romeo.  Further, Claimant argues that "ALJ specifically rejected the

only detailed, specific and most contemporaneous assessment of his residual functional capacity

("RFC"), which was done by Dr. Zaremba in October 2004." (Pl. Br. 10).

The ALJ must state with particularity the weight given different medical opinions and the

reasons for his attributions; the failure to do so is reversible error. *Sharfarz v. Bowen*, 825 F.2d

278, 279 (11th Cir. 1987); *see also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).

The ALJ did not actually *reject*, but instead  accorded little weight, to Dr. Zaremba's assessment

because it is inconsistent with "objective medical records, the claimant's treatment notes, and the

examination reports by both Drs. Rudd and Romeo." (R. 30).  The ALJ's statement displays not

only the weight accorded to Dr. Zaremba's opinion and the ALJ's reasoning, but also the weight

given to and the reasoning behind his crediting the opinions of Drs. Romeo and Rudd. The ALJ granted more weight to the opinions of Drs. Romeo and Rudd because neither found limitations in Claimant's range of motion or ability to drive, consistent with Claimant's objective medical records which found no remarkable findings that would cause back pain or headaches, other than Claimant's drug use, and no more than "mild to moderate" gastrointestinal symptoms. The ALJ grants less weight to the opinion of Dr. Zaremba, whose very restrictive limitations in Claimant's RFC, outlined above, contradict his own observations that the retained gunshot pellets in Claimant's back were not necessarily symptomatic and that Claimant's headaches could be caused from either medication overuse or from muscle contraction. Additionally, Dr. Zaremba's opinion is unsubstantiated by the medical evidence discussed above. Because the ALJ determined that Dr. Zaremba's estimate of Claimant's very limited RFC is inconsistent with the objective medical evidence and the RFCs provided by Drs. Romeo and Rudd, the ALJ properly accorded it less weight than the opinions of other physicians in the record.

Claimant incorrectly alleges that the ALJ "does not say the weight to be accorded to [Drs. Romeo & Rudd's] opinions" and improperly rejected Dr. Zaremba's opinion. (*Id.*). For the reasons above, this court is satisfied that the ALJ sufficiently expressed the weight given to the physicians' opinions and his reasons for doing so.

## II. Whether the ALJ's physical RFC findings are founded in the record and based upon substantial evidence.

Claimant argues that the ALJ's physical RFC finding is not founded upon evidence in the record because he did not accept any of the opinions in the transcript, but rather "came up with a totally different RFC, which can be found nowhere in the record." (Pl. Br. 10). "If [Claimant's]

case is at the [ALJ] hearing level," the ALJ is responsible for establishing Claimant's RFC. 20 C.F.R. § 404.1546(c).  The ALJ will base his RFC finding upon "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3).  He considers medical history, including consultative examinations as well as reports from the claimant's own medical sources and the claimant's own descriptions and observations of his limitations from his impairments.

Upon examination of the record, this court concludes that no *single* doctor determined an RFC upon which the ALJ's decision is based.  Rather, the ALJ considered the totality of the record to determine Claimant's RFC.  Although he assigned minimal weight to the opinion of Dr. Zaremba and controlling weight to the opinions of Drs. Romeo and Rudd, the ALJ's RFC finding strikes a balance among the opinions of the three consulting physicians in his decision.

The ALJ also considered Claimant's subjective complaints of pain in determining RFC findings.  In accordance with 20 C.F.R. §§ 404.4529 and 416.929, and Social Security Ruling 96-7p, the ALJ considered Claimant's subjective complaints in his application of the three-part standard used by the Eleventh Circuit Court of Appeals in determining a claimant's RFC. (R. 26).  A three-part "pain standard" applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms.  The pain standard requires (1) evidence of an underlying medical condition and *either* (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. *Wilson v. Barnhart* 284 F.3d 1219, 1225 (11th Cir. 2002); *see also Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999).  A finding of disability may be based on the claimant's own subjective testimony when it

12

is supported by medical evidence that satisfies the pain standard. *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995).  If an ALJ decides not to credit subjective testimony, she must discredit it explicitly and should articulate adequate reasons for discrediting. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).  A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by this court. *Foote*, 67 F.3d at 1562.

When the ALJ determined that Claimant's "primary disabling condition" was chronic low back pain and pain with symptoms from acid reflux disease, he determined that Claimant had sufficient evidence of an underlying medical condition to satisfy the first requirement of the pain standard. (R. 26).  However, the ALJ found neither objective medical evidence confirming the alleged severity of pain nor that the objectively determined medical condition was of such severity that it could be expected to give rise to the pain alleged.  The ALJ found that Claimant's disabling back pain was unsupported by objective medical evidence in the opinions of Drs. Romeo and Rudd.  Further, the ALJ found that Claimant has no medical records of treatment for back pain or any medical treatment from February 1, 2001 until March 4, 2003, indicating that Claimant was likely not experiencing disabling pain during that time.  Regarding headaches, the ALJ noted that no treatment notes or physicians indicated that Claimant suffered from disabling headaches. (R.30).  Further, Dr. Rudd expressly stated that he could "not document any objective neurologic findings to make a quantitative or even for that matter a more abstract basis for the impairment [headaches]." (R. 147).  The ALJ properly discredited Claimant's subjective complaints of disabling back pain and headaches because the record lacked objective medical findings to support these claims.

Considering Claimant's complaints of abdominal pain and disabling symptoms from acid

13

reflux disease, the ALJ found neither objective medical evidence to support such claims nor that such pain was likely to result from the impairment.  Treatment notes reveal that Claimant suffered no more than "mild to moderate" symptoms associated with his abdominal pains. (R. 28, 39).  Further, ALJ found both that Claimant's drug use and non-compliance with his treatments may have exacerbated his gastroenteritis.  Claimant admitted to using marijuana immediately before his stomach problems began, and he tested positive for drugs on at least two separate ER visits when he complained about his stomach.  Also, Claimant's treatment records reveal a history of failing to follow prescribed medical treatment.  Refusal to follow prescribed medical treatment without a good reason will preclude a finding of disability. 20 C.F.R. §404.1530(b), [20 C.F.R. §416.930(b)]; *also see Ellison v. Barnhart*, 355 F.3d. 1272, 1275 (11ᵗʰ Cir. 2003).

However, poverty excuses failure to follow prescribed medical treatment. *Id.* at 1275. After Claimant's gunshot wound, he failed to attend a follow-up appointment.  Further, Claimant removed his own halo two months prior to its intended removal.  He was instructed to go to Cooper Green and St. Vincent's Clinics, where doctors could give him more samples or help him get his prescriptions, but he did not obtain the assistance from the clinics.   While poverty might excuse Claimant's failure to attend follow-up appointments and to have prescriptions filled, his own interference with his treatment by pulling off his own halo and failing to obtain the *free* prescriptions by going to a clinic cannot.  The ALJ properly discredited Claimant's subjective accounts of pain because treatment notes indicate both that Claimant actively interfered with treatment for his head and back injuries and that his abdominal pain was only "mild to moderate" and was likely exacerbated by Claimant's drug use and  failure to follow prescribed treatment.

The court is satisfied that the ALJ based his physical RFC finding on substantial evidence

14

from the totality of the record because his RFC takes into account the opinions of Drs. Romeo,

Rudd, and Zaremba, as well as Claimant's own subjective complaints of pain.

### VII. Conclusion

For the reasons stated above, the court concludes that the decision of the Commissioner is

supported by substantial evidence, and the Commissioner applied correct legal standards.

Therefore, the decision of the Commissioner is AFFIRMED.

DONE and ORDERED this 30th day of June 2008.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE

15